**KRAFTDEV ASSOCIATES, LLC**

v.

**EAST COCALICO TOWNSHIP AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.
Decided April 8, 2014.

Lucy F. Dowd, Lititz, for appellant.

Brandon S. Harter, Lancaster, for appellee.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, and Judge FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The East Cocalico Township Authority (Authority) appeals from the June 5, 2013, order of the Court of Common Pleas of Lancaster County (trial court), which granted the summary judgment motion filed by Kraftdev Associates, LLC (Kraftdev) and denied the Authority's summary judgment motion. We affirm.

In 2007, Kraftdev planned a 57.05–acre commercial real estate development in East Cocalico Township (Township) known as Cocalico Commons. Before obtaining the Township's final approval, Kraftdev was required to obtain capacity letters from the Authority for both sewer and water services.

The Authority began designing a new water supply system to meet the water capacity needs of proposed real estate developments within its service area. The Authority notified Kraftdev and the public that the water supply project would require funding from the property owners in the form of capital contributions. The Authority asked all property owners interested in purchasing water under the new system, including Kraftdev, to execute an Agreement for Contribution to Capital Water Projects (Agreement).

On February 29, 2008, Kraftdev entered into the Agreement with the Authority and agreed to pay a total water contribution of $423,940. (Agmt. ¶ 2.) Kraftdev made an initial deposit in the form of a letter of credit in the amount of $105,985 (First Letter). The Agreement required Kraftdev to provide a second letter of credit in the amount of $317,955 (Second Letter) within 15 days of the Authority's written demand. (Agmt. ¶ 2.b.) The Agreement further provided that in the event of Kraftdev's default, Kraftdev would forfeit the First Letter as liquidated damages. (Agmt. ¶ 5.)

Subsequently, as a result of the economic downturn, several of Kraftdev's key commercial tenants withdrew from Cocalico Commons. Kraftdev was then unable to obtain financing, making it economically unfeasible for Kraftdev to proceed with the development. Thus, Kraftdev postponed the development of Cocalico Commons.

On August 21, 2012, the Authority sent Kraftdev a written demand for the Second Letter, which Kraftdev refused to provide. On September 10, 2012, Kraftdev filed a complaint seeking a declaration that the Development Permit Extension Act (Act), Act of July 9, 2013, P.L. 362, 53 P.S. §§ 11703.1–11703.8,[1] applied to the Agreement and that, under the Act, Kraftdev had until July 2016 to provide the Authority with the Second Letter. Kraftdev also filed a motion for preliminary and permanent injunctive relief.

On September 12, 2012, the trial court granted Kraftdev's motion for preliminary injunctive relief, enjoining the Authority from finding Kraftdev in default for 45 days from the date of the order. On October 1, 2012, the Authority filed an answer

---

1. The Act was formerly known as the Permit Extension Act and was codified at Article XVI–I of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§ 1601–I to 1608–I, added by Section 2.5 of the Act of July 6, 2010, P.L. 279. On July 9, 2013, the legislature repealed the Permit Extension Act and enacted the Development Permit Exten- sion Act. The trial court in this case applied the original Permit Extension Act, which was in effect at the time of the parties' Agreement. However, the relevant sections of the original statute are nearly identical to their companion sections in the new Act. Therefore, as the parties have done in their briefs, we will cite the relevant sections of the new Act herein.

and counterclaim for breach of contract, to which Kraftdev filed a reply. Thereafter, both parties filed motions for summary judgment.

On June 5, 2013, the trial court granted Kraftdev's summary judgment motion, denied the Authority's summary judgment motion, dismissed the Authority's counterclaim, and dissolved the preliminary injunction. The trial court also suspended Kraftdev's deadline for supplying the Second Letter until July 2016 pursuant to the Act.[2]

On appeal,[3] the Authority asserts that the trial court erred in concluding that the Act applies to the Agreement. Specifically, the Authority disputes the trial court's finding that the Agreement controls whether Kraftdev's development project can "proceed" under section 2 of the Act. According to the Authority, the Agreement does not allow Kraftdev's project to proceed; that authority lies exclusively with the Township's Board of Supervisors, which must issue final plan approval. We reject these claims.

Section 2 of the Act broadly defines "approval" as "any government agency ... agreement ... allowing a development or construction project to proceed." 53 P.S. § 11703.2. The Authority claims that the Agreement in this case is merely a funding agreement and not the type of "approval" contemplated by the Act. We disagree. The Agreement provides that, in exchange for Kraftdev's capital contribution, the Authority will provide Kraftdev with the water and sewer capacity letters necessary for its construction project to proceed to final Township approval. The Agreement expressly states, "Upon payment of the balance of the Water Contribution as provided in Paragraph 2.c. herein ... [the] Authority shall provide Property Owner with the required capacity documents for the Property for water *to enable the Property Owner to secure final plan approval from [the] Township.*" (Agmt. ¶ 3 (emphasis added).) Thus, contrary to the Authority's assertion, the Agreement in this case does not "indirectly affect[ ]" Kraftdev's development project (Authority's Br. at 14); rather, it is directly linked to a vital component of the approval process. Applying the Act's plain language, we conclude that the Agreement satisfies the definition of "approval."

Accordingly, we affirm.

### ORDER

AND NOW, this *8th* day of *April,* 2014, we hereby affirm the June 5, 2013, order

---

**2.** Section 3(a) of the Act states, "The expiration date of an *approval by a government agency* that is granted for or in effect during the extension period, whether obtained before or after the beginning of the extension period, *shall be automatically suspended during the extension period.*" 53 P.S. § 11703.3(a) (emphasis added). Section 2 of the Act provides the following definitions:

"**Approval.**" (1) Except as provided in paragraph (2), any government agency approval, agreement, permit, including a building permit or construction permit, or other authorization or decision:

(i) allowing a development or construction project to proceed ...

* * *

"**Extension period.**" The period beginning after December 31, 2008, and ending before July 2, 2016.

"**Government agency.**" The Commonwealth, a political subdivision or an agency, department, authority, commission or board of the Commonwealth or a political subdivision. The term includes regional commissions, boards or instrumentalities with the authority to issue approvals.

53 P.S. § 11703.2.

**3.** "Our scope of review of a trial court's grant of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion." *Zlakowski v. Department of Transportation,* 154 Pa. Cmwlth. 528, 624 A.2d 259, 260 n. 4 (1993).